UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LYONDELL CHEMICAL COMPANY, *et al.*, | ) |  |
|  | ) | Case No. 09-10023 (REG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
| _____ | ) |  |
|  | ) |  |
| LYONDELL CHEMICAL COMPANY, *et al.*, | ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
| *against* | ) | Adversary Proceeding |
|  | ) |  |
| AIR PRODUCTS L.P., AIR PRODUCTS LLC, | ) | No. 09-01072 (REG) |
| AIR PRODUCTS CHEMICALS EUROPE, | ) |  |
| B.V., and AIR PRODUCTS AND | ) |  |
| CHEMICALS, INC., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
| _____ | ) |  |

BENCH DECISION[1] ON MOTION FOR
PRELIMINARY INJUNCTION
OR EXTENSION OF AUTOMATIC STAY
(AIR PRODUCTS ENTITIES)

---

[1] I use bench decisions to lay out in writing decisions that are too long, or too important, to dictate in open court, but where the circumstances do not permit more leisurely drafting or more extensive or polished discussion. Because they often start as scripts for decisions to be dictated in open court, they typically have less in the way of citations and footnotes, and have a more conversational tone.

APPEARANCES:

CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for Debtors
One World Financial Center
New York, NY 10281
By:    Deryck A. Palmer, Esq.
John J. Rapisardi, Esq.
George A. Davis, Esq.

1201 F. Street N.W.
Washington, DC 20004
By:    Marc C. Ellenberg, Esq. (argued)
       Peter M. Friedman, Esq.


DECHERT LLP
Counsel for Air Products
1095 Avenue of the Americas
New York, NY 10036
By:    Gary J. Mennitt, Esq. (argued)
       Jonathan D. Perry, Esq.
       Daniel A. Lebersfeld, Esq.

902 Carnegie Center, Suite 500
Princeton, NJ 08540
By:    David A. Kotler, Esq.


BEFORE:    ROBERT E. GERBER
           UNITED STATES BANKRUPTCY JUDGE

In this adversary proceeding under the umbrella of the jointly administered

chapter 11 cases of plaintiff Lyondell Chemical Co. (**"Lyondell Chemical"**) and its

affiliates—in which Lyondell Chemical also seeks a declaratory judgment with respect to

matters discussed below—Lyondell Chemical seeks a preliminary injunction or an

extension of the automatic stay.

Lyondell Chemical seeks to block each of the four defendants Air Products L.P.;

Air Products LLC; Air Products Chemicals Europe, B.V.; and Air Products and

Chemicals, Inc. (**"Air Products and Chemicals,"** and together with the other defendants, the **"Air Products Entities"**) from proceeding with civil actions in New York State Court and France against Lyondell Chemical's nondebtor affiliates Lyondell Chimie, TDI SCA (**"Lyondell Chimie"**) and Lyondell Chimie's managing entities Lyondell Chimie France SAS (**"Lyondell Chimie France"**) and Lyondell France Holdings SAS (**"Lyondell France Holdings,"** and together with Lyondell Chimie France, the **"Lyondell Chimie Parents"**). Lyondell Chimie and the Lyondell Chimie Parents are together referred to as the **"Lyondell Chimie Entities."** I'll refer to all Lyondell affiliates together as the **"Lyondell Entities."**

Under a settlement agreement dated June 1, 2007 (the **"Settlement Agreement"**), Lyondell Chemical became obligated to pay one of the Air Products Entities $89 million, of which approximately $28 million (the **"Unpaid $28 Million"**) remains unpaid. The Air Products Entities contend that not only is Lyondell Chemical responsible for the Unpaid $28 Million, but that *Lyondell Chimie* was named as an obligor too—making the Chimie Parents liable for the Unpaid $28 Million as well.

Lyondell Chemical seeks the requested injunction on what amount to four separate theories. Rearranging the order in which Lyondell presented them, slightly, Lyondell Chemical argues that the requested injunction should be granted:

> (1) under nonbankruptcy preliminary injunction doctrine, as a consequence of the Lyondell Entities' likelihood of success on their contention that Lyondell Chemical alone is liable for the unpaid $28 million;

(2) because the New York and French actions should be stayed,

pending determination in this Court, under the "First to File" Rule;

(3) to implement or extend the section 362 stay; and

(4) under the Court's Bankruptcy Code section 105(a) power,

under which bankruptcy courts can issue orders necessary to assist in the

debtor's reorganization.

I find that the Lyondell Entities have shown a likelihood of success on their

contentions that the Lyondell Chimie Entities were not obligors for the Unpaid $28

Million. But I can't find that they have a comparable likelihood of success on whether

I'd have subject matter jurisdiction to hear the declaratory judgment action. Thus I

cannot grant the requested injunction on the first ground, and that makes invocation of

the "First to File" Rule, the second ground, inappropriate as well. With respect to the

third and fourth grounds, I cannot regard the controversy here as an appropriate one for

implementing or extending the section 362 stay, and I find insufficient interference with

the Debtors' ability to reorganize to justify use of my section 105(a) power.

Thus the requested preliminary injunction is denied, though without prejudice to

renewal under circumstances discussed below. My Findings of Fact, Conclusions of

Law, and bases for the exercise of my discretion in connection with this determination

follow.

<u>Findings of Fact</u>[2]

*1. Background*

One or more of the Air Products Entities are in the business of manufacturing dinitrotoluene (**"DNT"**) and toluenediamine (**"TDA"**).  DNT is used to manufacture TDA, which is, in turn, used to manufacture toluene diisocyanate (**"TDI"**).

Both Lyondell Chemical and Lyondell Chimie have been in the business of manufacturing TDI.  Lyondell Chemical operated the Lyondell Entities' US TDI business, while Lyondell Chimie operated the French TDI business.  One or more of the Air Products Entities supplied DNT to a Lyondell Chemical TDI plant in Lake Charles, Louisiana (the **"Lake Charles Plant"**), and to a Lyondell Chimie TDI plant in Pont de Claix, France (the **"French Plant"**).

These supply relationships were memorialized in two agreements.  Lyondell Chemical was the successor to an agreement dated May 9, 1995 (which I'll refer to as the **"US DNT Agreement"**), pursuant to which Air Products L.P. would supply DNT from its Pasadena plant to Lyondell Chemical's Lake Charles Plant.  Air Products L.P. and Air Products Chemicals Europe, B.V. (**"Air Products Chemicals Europe,"** an Air Products European affiliate) and Lyondell Chemical and Lyondell Chimie entered into a second agreement dated November 17, 2005 (which I'll call the **"International Agreement"**). Pursuant to that agreement, Air Products L.P. and Air Products Chemical Europe supplied TDA to Lyondell Chimie's French Plant.

---

[2]      Pursuant to the parties' agreement and the Case Management Order, I take as true all of the facts (but not necessarily arguments and conclusions) in the declarations submitted to me.

*2. The Earlier Lawsuit*

In fall of 2005, Lyondell Chemical announced that it was ceasing certain operations at the Lake Charles facility, and that it would stop purchasing DNT from Air Products L.P. under the US DNT Agreement.  At that time, Lyondell Chimie continued to purchase TDA from Air Products L.P. and Air Products Chemical Europe pursuant to the International Agreement.

After Lyondell Chemical ceased purchasing DNT from Air Products L.P. pursuant to the US DNT Agreement, Air Products L.P. and Lyondell tried to reach a negotiated resolution.  After negotiations failed, Air Products LLC[3] filed suit against Lyondell Chemical on April 24, 2006, in the Supreme Court of New York County (the **"Earlier Lawsuit"**).[4]  Lyondell Chimie, which was not a party to the US DNT Agreement, was not a party to the Earlier Lawsuit.

*3. The Settlement Agreement*

On June 1, 2007, a little more than a year after the Earlier Lawsuit was filed, Lyondell Chemical, Lyondell Chimie, and the Air Products Entities entered into the Settlement Agreement.  The Settlement Agreement settled the Earlier Lawsuit, and additionally, terminated the US DNT Agreement, amended the International Agreement, and amended other supply contracts between Dutch affiliates of the Lyondell Entities and Dutch affiliates of the Air Products Entities.

---

[3]    On or about June 27, 2007, Air Products L.P. merged into its general partner, Air Products LLC. *See* Debtors Obj. n. 1.  I do not now decide how that merger affected the rights and obligations of any of the Air Products Entities, but that merger may explain some of the apparent discrepancies in references to Air Products Entities in the pleadings and the underlying documents.

[4]    The Summons listed the plaintiff in the action as Air Products and Chemicals.  I see no explanation for the discrepancy.

Pursuant to the Settlement Agreement, "Lyondell"—subject to the considerable additional explanation that's needed here, as set forth in Section 6 of my Findings of Fact—agreed to make an initial settlement payment of $49.9 million, and four additional payments of $10 million each year, at the end of January of 2008, 2009, 2010, and 2011 (the **"Settlement Payments"**).

Together with these Settlement Payments, the parties agreed to amend the International Agreement, pursuant to which Air Products L.P. and Air Products Chemicals Europe were required to give a "credited volume rebate" (the **"Rebate"**) to "Lyondell" in the event that the total amount of TDA purchased by Lyondell Chemical and Lyondell Chimie reached a certain volume. Additionally, "Lyondell" could credit any such rebate against the scheduled annual payment amounts to Air Products L.P. and Air Products Chemicals Europe by the Lyondell Entities who were parties to the Settlement Agreement.

### 4. *Performance Under the Settlement Agreement*

Lyondell Chemical paid one or another of the Air Products Entities[5] the initial $49.9 million in accordance with the Settlement Agreement, and Lyondell Chemical thereafter paid one or another of the Air Products Entities[6] the next installment (net of the Rebate), which was due in January of 2008. But on or about January 26, 2009, Patrick Lyons of Air Products and Chemicals was informed that further payments under the Settlement Agreement would not be forthcoming, by reason of "the 6 January 2009

---

[5]      Most likely, Air Products and Chemicals, the entity to whom payment was to be wired under Settlement Agreement Section IV(C).

[6]      *See* n.5 above.

bankruptcy filing by various LyondellBasell Industries (LBI) entities….”[7]  The Air

Products Entities were informed either then or in ensuing communications that Lyondell

Chemical—one of the LBI entities that was now a chapter 11 debtor—was the only entity

liable for these payments, and that further payments by Lyondell Chemical on this

prepetition debt could not be made.

5.  *Enforcement Actions by Air Products and Chemicals*

        In February 2009, Air Products L.P., Air Products Chemicals Europe and Air

Products and Chemicals commenced garnishment proceedings in the French courts

against the assets of Lyondell Chimie and the Lyondell Chimie Parents, arguing that a

failure to pay by Lyondell Chimie was a breach of the Settlement Agreement.  The Air

Products Entities were able to freeze the relatively minor sum of €197,000 in Lyondell

Chimie assets, in French Citibank accounts, as a consequence of the garnishment.  On

March 5, 2009, Air Products LLC commenced a lawsuit on the merits against Lyondell

Chimie, necessary to support its attachment, in the Supreme Court of the State of New

York, New York County (the **“New York State Action”**)—contending that Lyondell

Chimie, and not just Lyondell Chemical, was liable for the Unpaid $28 Million.[8]  The

Settlement Agreement had a forum selection clause requiring any controversy arising

from the Settlement Agreement to be commenced in a state or federal court in New York.

And a suit in New York Supreme Court was consistent with the requirements of the

---

[7]     *See* Motion Exh. I.  Lyons' letter continued that for that reason, “LBI will not make” the further
        payments due.  LBI was not a signatory to the Settlement Agreement, though it appears to be
        undisputed that LBI had asked that the invoices for the remaining payments due under the
        Settlement Agreement be addressed to LBI, and that the January 2009 invoice was addressed to
        “LyondellBasell Industries” in Houston, Mr. Patrick Quarles, of “LyondellBasell Industries” in
        Rotterdam, and the “LyondellBasell Industries Law Department,” in Houston.  *See* Motion
        Exh. H.

[8]     Motion Exh. M.

forum selection clause—as a suit in a federal court (in a district court or bankruptcy court) also would be.

Thereafter, the Air Products Entities commenced another lawsuit in the courts of France against the Lyondell Chimie Parents, to establish their liability as well for the Unpaid $28 Million, under French law, as the managing entities of Lyondell Chimie. Counsel for the Air Products Entities has represented to me that this second lawsuit in France is merely to fix the liability of the Lyondell Chimie Parents for such sums for which Lyondell Chimie might be liable, after a determination in the New York State Action. The Air Products Entities' counsel has disclaimed any intention to ask the French court to construe the Settlement Agreement—a matter that would, of course, be violative of the forum selection clause. In addition to the attachment of the €197,000 in Lyondell Chimie assets mentioned above, the Air Products Entities obtained additional attachments of €288,000 and €47,000 in assets of Lyondell Chimie France and Lyondell France Holdings.

6. *Ambiguities in the Settlement Agreement*

I've surrounded references to "Lyondell" by quotes in the paragraphs above and below by reason of the extraordinarily ambiguous drafting of the Settlement Agreement. The Settlement Agreement began in its preamble:

> THIS SETTLEMENT AGREEMENT (with its Exhibits, the "Settlement Agreement") is made and effective on this 1st day of June 2007 (the "Effective Date") by and between, on the one hand, Lyondell Chemical Company and Lyondell Chimie TDI, SCA (*collectively or in part "Lyondell"*), and, on the other hand, Air Products L.P., Air Products Chemicals Europe, B.V. and Air Products and Chemicals, Inc. (*collectively or in part "Air*

*Products"*).  Lyondell and Air Products are
collectively referred to herein as the "Parties".[9]

Then, the critically important paragraphs setting forth the obligation to pay,

Settlement Agreement Sections IV(A) and (B), provided, respectively:

> For and in consideration of the promises set forth in
> this Settlement Agreement, Lyondell shall pay Air
> Products $49,900,000 (the "Initial Settlement
> Payment") on June 8, 2007.[10]

and

> For and in consideration of the promises set forth in
> this Settlement Agreement, Lyondell shall make the
> following additional payments to Air Products in
> the amount set forth below[.][11]

The words "collectively or in part" provide two separate and inconsistent bases by

which to construe the vaguely defined term "Lyondell."  And no standards are articulated

in the Settlement Agreement under which a reader can discern whether a reference to

"Lyondell" in each of the various places in which it appears refers to Lyondell Chemical,

Lyondell Chimie, or both of them, "collectively."[12]  At least in the respect of which of the

---

[9]       Motion Exh. E at 1 (emphasis added).

[10]      Settlement Agreement Section IV(A).

[11]      Settlement Agreement Section IV(B).

[12]      Likewise, no standards are articulated in the Settlement Agreement under which a reader can
         discern whether references to "Air Products" refer to Air Products L.P., Air Products Chemicals
         Europe, B.V., Air Products and Chemicals, Inc., or all of them, "collectively."

         However, in contrast to its lack of specificity with respect to the particular Lyondell Entities that
         had the duty to pay, the Settlement Agreement was specific as to the recipient of the payment.  It
         provided, in its Section IV(C), captioned "Payment Instructions and Interest":

> The Settlement Payments under this Section IV shall be made
> by wire transfer of immediately available funds to the
> following account:
>
>> JP Morgan Chase Bank
>> [Bank Routing Number deleted]
>> [Other Bank information deleted]
>> Account Name:  Air Products and Chemicals, Inc.
>> [Account Number deleted].

Lyondell Entities was the obligor on the Section IV(B) covenant to pay the remaining

sums due on the Settlement Agreement, the Settlement Agreement is extraordinarily

ambiguous.

    But plainly there is no basis for the Air Products Entities' contention that by

reason of the inclusion of the word "collectively" in the Preamble, "Lyondell," when

mentioned in Section IV(B), *necessarily* covers both of the Lyondell Entities.  The term

"Lyondell" appears in the Settlement Agreement 70 times.  Of these, only 3 necessarily

refer to both Lyondell Chemical and Lyondell Chimie, where by the Settlement

Agreement's context, it refers to each at the same time.  Another 21 necessarily must

refer to Lyondell Chemical alone—as they deal with historic facts as to which the fact

would be true only if the Settlement Agreement were referring just to Lyondell Chemical,

or would make sense only if the Settlement Agreement were referring to Lyondell

Chemical alone.  By the same analysis, 3 necessarily must refer to Lyondell Chimie—as

they otherwise would be untrue as a matter of historical fact, or would not make sense.

And another 15 refer to the ability of "Lyondell" to secure the approval of its Board of

Directors for actions of Dutch entities, which would seemingly be impossible, as a matter

of corporate control, for *either* Lyondell Chemical Corporation or Lyondell Chimie.

    When I asked counsel for the Air Products Entities whether the "in part" in the

italicized language had to have *some* meaning, he understandably conceded that it did.  I

---

                Air Products may change the account to which the Settlement
                Payments shall be sent upon reasonable written notice to
                Lyondell.

        But neither the "Air Products" entity that could change the account to which the Settlement
        Payments were to be made, nor the "Lyondell" to whom notice would be sent (or the extent to
        which those references applied to more than one of the Air Products Entities or the Lyondell
        Entities), was specified, nor were standards for determining which of those entities were referred
        to.  Thus the Settlement Agreement is rife with ambiguities, though not all of them are relevant to
        the particular controversy now before me.

can only conclude, consistent with that acknowledgment and common sense, that "in part" must be read as an alternative to "collectively," with each to be considered applicable as the context requires.  The Debtors thus have shown to a certainty—a showing much more than a likelihood of success—that "in part" must apply to at least some of the references to "Lyondell," and that a court construing the contract—rather than mechanically applying "collectively" instead of "in part"—must look to the context and surrounding circumstances to determine when "Lyondell" refers to Lyondell Chemical, Lyondell Chimie, or both of them (including, by way of example, what was discussed and what wasn't, and by whom).

The Lyondell Entities put forth evidence explaining the rationale for including Lyondell Chimie as a party to the Settlement Agreement—so Lyondell Chimie could give up rights under the US DNT Agreement, and provide the basis for the computation of a credit against the payments due.  The Lyondell Entities have noted that Lyondell Chemical was (and still is) much larger than Lyondell Chimie—suggesting that there was little reason to make Lyondell Chimie an obligor to provide credit support, to give the Air Products Entities a better chance of getting the payments that would be due.  The evidence is undisputed that no employees or management from any of the Lyondell Chimie Entities—who are asserted to have undertaken an obligation once as high as $89.9 million—participated in negotiation or drafting of the Settlement Agreement.  And most significantly, no evidence was submitted by the Air Products Entities to suggest that there *ever was any discussion* in the negotiations of the possibility of Lyondell Chimie's becoming an obligor on the Settlement Payments, much less that any of the Air Products

Entities had then requested such, or expressed its understanding or expectation that such would be the case.

Thus I find that the Lyondell Entities have shown a likelihood of success on their contention that "nobody imagined" that Lyondell Chimie was liable for the payments under the Settlement Agreement, and that the Air Products Entities are seizing on the inept drafting of the definitions of "Lyondell" and "Air Products" to use the ambiguity to argue for a contractual construction that never was discussed. The Debtors have thus shown a likelihood of success in their contentions that Lyondell Chemical alone, and not Lyondell Chimie as well, was the obligor on the Unpaid $28 Million.

## 7. *Effect on the Debtors*

I further find, however, that the Debtors have failed to show that injury to them by reason of Air Products LLC's lawsuit is imminent. In fact, it's now unlikely that there will be any injury to them before this bankruptcy case comes to an end.

This bankruptcy is on a fast track, and it's likely to be completed, one way or another, within about 8 months. Given the burdens on the New York state courts, parties' entitlement to discovery, the time inherent in motion practice, the lack of urgency of the New York State Action, and the likely need to put the New York State Action on a trial calendar (if it is not dismissed sooner), it's highly unlikely that the New York state courts would be in a position to enter a judgment in favor of Air Products LLC within that time.

And even if Air Products LLC could get a judgment, and get a judgment quickly, I find that an important type of asserted injury to the Estate would not be forthcoming. The Lyondell Chimie Entities are not debtors in this Court. Even if any of them paid down an obligation of Lyondell Chemical and got rights of subrogation, we'd simply be substituting one creditor for another, as contrasted to *increasing* the Debtors' liabilities.

-13-

Also, the showing of injury to one or more of the Debtors in this chapter 11 case by reason of the pendency of litigation over the issues here is modest.  The showing here is weaker than the showing that was made when I granted an injunction (albeit limited in duration) in favor of Lyondell Chemical in the *CenterPoint* matter.[13]  Here there was essentially no showing of such injury before the Debtors submitted their second supplemental Balderston Declaration, after the oral argument in this matter, and even after that, there has been an insufficient showing that the burdens of the litigation or of financial difficulties on the part of Lyondell Chimie Entities would materially affect the Debtors' operations or impair their ability to reorganize here in the United States.

The Lyondell Entities point out, in their second supplemental Balderston Declaration, that executives of Lyondell Chemical would have the relevant facts as to the issues here, and would be needed to provide the relevant evidence as to the merits of this controversy.  While I take that as true, I must note that the Lyondell Entities acknowledge that the Lyondell Chemical executives would have to do the same if the litigation continued before me.  The Lyondell Entities argue only that I have the ability to manage my docket in a way that "would buffer the impact" of the Lyondell Chemical executive witnesses' roles on Debtor reorganization efforts, and that my practice of taking direct testimony by declaration "substantially reduces courtroom time for witnesses."[14]

But the loss of efficiencies that I try to offer litigants falls short of legally cognizable prejudice.  That is especially so since New York state court judges, at least in the motions phase of an action, take so much of their evidence by affidavit, affirmation,

---

[13]    *See Lyondell Chemical Co. v. CenterPoint Energy Gas Servs., Inc. (In re Lyondell Chemical Co.),* 402 B.R. 571 (Bankr. S.D.N.Y. 2009).

[14]    Balderston Second Supp. Decl. ¶ 7.

-14-

or declaration, and they too could be expected to accommodate burdens on witnesses. The Debtors' executives can be interviewed by the Debtors' counsel (to the extent they haven't been interviewed already), and they can easily review, correct, and sign affidavits that their counsel prepare for them. In the unlikely event that a trial in the New York State Action would take place at a time when the executives are still busy, I could review the situation then, and provide a limited stay for the 30 or 60 days that might be necessary. In short, the prejudice here by reason of Debtor executives needing to offer evidence is modest, at best.

Finally, I find only modest injury at best by reason of the asserted damage to the Lyondell "brand" in Europe, where we already have Lyondell Chemical and 80 of its affiliates—including the worldwide parent LyondellBasell Industries AF SCA—in insolvency proceedings pending here.

To the extent there has been any showing of prospective injury to U.S. entities, it would be by reason of injury to *Lyondell Chimie France* (which is not a defendant in the New York State Action), partly by reason of asserted operational concerns, and partly because Lyondell Chimie France is a material subsidiary under the Debtors' DIP financing facility. But the claim of operational injury is vague and generalized, largely making broad statements such as that the LyondellBasell worldwide operation is a "global" "integrated enterprise," whose companies engage in a "global coordination of their businesses" that "optimize" their operations on "a global basis to achieve maximum profitability in any business environment."[15] While it may be, as Mr. Balderston states in his declaration, that healthy operations at a Lyondell Chimie France plant would permit

---

[15]    *See* Balderston Second Supp. Decl. ¶ 11.

production there to be increased, and production in the U.S. to be decreased, that is quite

a bit less than saying that the Debtors' reorganization would be impaired.

There is, to be sure, a possible injury resulting from an insolvency proceeding

involving one of the Lyondell Chimie Parents, Lyondell Chimie France, which is a

"material subsidiary" under one or more of the Debtors' DIP financing facilities, and

where an insolvency proceeding by or against Lyondell Chimie France would be an event

of default under one or more of those facilities.  But as I noted, Lyondell Chimie France

is not now a defendant in the New York State Action, and Lyondell Chimie France would

be subject to the risk of an insolvency proceeding only if a judgment were entered against

Lyondell Chimie in the New York State Action first.  Such a judgment, as I've noted

above, is not likely to be entered at any time soon, if ever.  At this juncture, there is no

present or imminent injury to this estate, at least in any material way.

<u>Discussion</u>

I turn now to my Conclusions of Law and bases for the exercise of my discretion

on this motion.

1.      *Likelihood of Success in Declaratory Judgment Action*

As noted above in my Findings of Fact, the Debtors have shown a likelihood of

success on the *merits* of the declaratory judgment action.  While the Settlement

Agreement was poorly drafted, giving rise to the ambiguity that the Air Products Entities

seek to exploit, the circumstances I discussed at page 9 et seq. above strongly support the

Debtors' position that in the context of Section IV(B), "Lyondell" refers solely to

Lyondell Chemical.

But any likelihood of success analysis also requires a showing of likelihood of

success on the bankruptcy court's *jurisdiction* to hear the declaratory judgment action.

-16-

Here I can't find a likelihood of success on Lyondell Chemical's part. The underlying controversy in the declaratory judgment action is in substance between nondebtor Air Products LLC and nondebtor Lyondell Chimie. The fundamental issue to be decided in the declaratory judgment action is whether nondebtor Lyondell Chimie is an obligor on the duty, under Section IV(B) of the Settlement Agreement, to pay one or another of the Air Products Entities the amounts remaining to be paid. It's the obligation of Lyondell Chimie (and indirectly, the Lyondell Chimie Parents) that is in question, not that of Lyondell Chemical or any other debtor entity. And it involves a determination of rights under a contract under state law; I'm asked to decide the extent, if any, of the contractual obligation of one non-debtor entity to another non-debtor entity.

The declaratory judgment action involves a question of contractual interpretation, not application of the Bankruptcy Code, and could as easily arise if Lyondell Chemical and its affiliates hadn't filed petitions under the Code. Thus the declaratory judgment action doesn't invoke my "arising under" or "arising in" jurisdiction, and we are left with the extent, if any, to which the declaratory judgment action invokes my "related to jurisdiction."[16] With respect to that, as I noted in my decision in the *CenterPoint* matter,[17] the Second Circuit, though it's hardly alone in this regard, follows the Third Circuit's "*Pacor*" test.[18] As the Circuit stated in *Cuyahoga Equipment,* the test for determining whether litigation has the requisite connection with a pending bankruptcy case—and thus provides a basis for "related to" jurisdiction—is whether its outcome

---

[16]    *See* 28 U.S.C. § 1334(b).

[17]    *See* 402 B.R. at 586.

[18]    *See Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992) ("*Cuyahoga Equipment*"), *citing Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

might have any "conceivable effect" on the bankrupt estate.[19]  Here, where I would be

asked to determine, in the declaratory judgment action, the contractual liability of one

non-debtor to another non-debtor, I'm not in a position to find that Lyondell Chemical (or

any other debtor in Lyondell Chemical's chapter 11 case) would have a likelihood of

success on my having subject matter jurisdiction to decide such a controversy.[20]

2.      *First to File Rule*

        Lyondell Chemical then asks me to issue the requested injunction based on the

"First to File" Rule.  Application of the First to File Rule might be appropriate if I were

going to take jurisdiction of the declaratory judgment action.  But because Lyondell

Chemical has failed to show a likelihood of success that I'd ultimately have jurisdiction

to decide the declaratory judgment controversy, issuing an injunction under the First to

File Rule, premised on an exercise of jurisdiction that I must now regard as unlikely,

would be inappropriate.  I thus have no occasion to decide whether the First to File Rule

would otherwise provide a basis for relief.

3.      *Implementing or Extending the Section 362 Stay*

        Lyondell Chemical then asks me to enjoin the New York State Action (or to

achieve the equivalent, by holding that section 362(a) already prohibits the New York

State Action) under my power to implement or extend the section 362 stay.

        Where an action against a nondebtor is in substance an action against a debtor,

and could increase the debtor's liabilities as a result, a bankruptcy court may enter an

order blocking the prosecution of the action against the nondebtor, by implementing or

---

[19]    980 F.2d at 114.

[20]    I do not today decide, however, the ultimate jurisdictional issue, nor do I decide whether I'd have
        subject matter jurisdiction to decide a dispute between non-debtors where the outcome would have
        a greater effect on the estate.

-18-

extending the automatic stay.[21]  But here Lyondell Chemical is already liable under the

Settlement Agreement to one or another of the Air Products Entities, and a judgment in

favor of one or another of the Air Products Entities against Lyondell Chimie would not

make Lyondell Chemical any more liable.  And to the extent Lyondell Chimie might be

found liable, might then pay one or another of the Air Products Entities on the judgment,

and might thus have rights of indemnification or subrogation against Lyondell Chemical,

such would be as a result of a reduction of Lyondell Chemical's obligations to the same

extent, and merely result in a substitution of creditors.  There is an insufficient basis for

entry of an order implementing or extending the automatic stay here.

4.    *Use of Section 105(a) Power to Avoid Interference
      with Debtors' Ability to Reorganize*

Lastly, Lyondell Chemical seeks to enjoin continued prosecution of the New York

State Action by invocation of my power under section 105(a) of the Code to prevent

interference with the Debtors' ability to reorganize.

As I noted in the *CenterPoint* matter, bankruptcy courts have the power, under

section 105(a) of the Code, to enjoin the prosecution of litigation that would impair a

debtor's ability to reorganize, even where the prosecution of such actions would not be

proscribed under section 362(a) of the Code.[22]  However, here there would be a minimal

effect on the estate, much less on any of the debtors' ability to reorganize, if the New

---

[21]    *See, e.g., Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003) ("The automatic stay
can apply to non-debtors, but normally does so only when a claim against the non-debtor will have
an immediate adverse economic consequence for the debtor's estate," such as where "the debtor
may be said to be the real party defendant..."), citing *A.H. Robins v. Piccinin*, 788 F.2d 994, 998-
1007 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986).

[22]    *See* 402 B.R. at 587 ("No one considering this matter objectively disputes the power of a
bankruptcy court, under section 105(a) of the Code, to enjoin acts against third parties when they
impair a debtor's ability to reorganize in a chapter 11 case—even though such acts are not
proscribed by the automatic stay of section 362 of the Code.  The issue, once more, is the
appropriate exercise of the court's power.") (footnote omitted).

York State Court were to decide the issues raised in the declaratory judgment action,

even if such decision were to be adverse to Lyondell Chimie.

As I noted in my Findings of Fact, only Lyondell Chimie, of the various Lyondell

Chimie Entities, is a defendant in the New York State Action.  Though the Debtors

submitted six declarations in support of their motion, none made any material showing of

an operational or financial effect of a judgment against Lyondell Chimie on any of the

Debtors' affairs, much less their ability to reorganize.  In fact, there was not even a

showing that Lyondell Chimie is still engaged in an active business, and the implication

was that Lyondell Chimie is not now even operating at all.  Certainly there was no proof

of any Lyondell Chimie role, much less a material one, in integrated LyondellBasell

worldwide operations.  In fact, the Lyondell Entities expressly acknowledged the

opposite.[23]

As I also noted in my Findings of Fact, to the extent there has been a showing of

prospective injury to U.S. entities, it would be by reason of injury to one of the Lyondell

Chimie Parents, *Lyondell Chimie France* (which is not a defendant in the state court

litigation here in the U.S.), partly by reason of operational concerns, and partly because

Lyondell Chimie France is a material subsidiary under the Debtors' DIP financing

facility, under which a Lyondell Chimie insolvency would be an event of default.  But as

I've noted, injury to Lyondell Chimie France, if it could happen at all, is not imminent.

As also noted above, Lyondell Chimie France is not now a defendant in the New York

State Action, and would be subject to the risk of an insolvency proceeding only if a

judgment were entered against Lyondell Chimie here first.  And for reasons that I noted

---

[23]    *See* Balderston Second Supp. Decl. ¶ 11 ("Although Lyondell Chimie is not in itself an integral
part of [LyondellBasell's] current global operations …").

above in my Findings of Fact, a judgment in the New York State Action is not likely to

happen quickly, if indeed it is to happen at all.  If the Debtors' lenders announced an

unwillingness to waive that default, or if a judgment against Lyondell Chimie were

imminent (which might then create a debt against Lyondell Chimie France which could

raise the specter of a Lyondell Chimie France insolvency), then circumstances might

change, and might warrant a fresh look.  But at this point, there is no risk to Lyondell

Chimie France, and I'm doubtful that there ever will be one.

      The situation here is to be contrasted with the situation I addressed in

*CenterPoint*, where there was a showing of operational prejudice to the Debtors in the

United States, and where an involuntary insolvency proceeding in Europe was threatened

against the *parent* enterprise, which would be a default under the Debtor's DIP financing

facility.  And even then, I granted an injunction for only 60 days.  There the prospective

injury was much more imminent and serious.  A comparable showing has not been made

here.

Conclusion

      For the foregoing reasons, the Debtors' motion for a preliminary injunction is

denied.  While I find that Lyondell Chemical has shown a likelihood of success that the

Lyondell Entities will prevail on the merits of their dispute with the Air Products Entities,

Lyondell Chemical has not shown a likelihood of success on my having jurisdiction to

issue the declaratory judgment that Lyondell Chemical seeks in that regard, nor has it

shown the requisite tipping of the equities in its favor.

      Thus, as it is unlikely that I would have the jurisdiction to issue the desired

declaratory judgment, I have no occasion to consider whether I could or should stay the

New York State Action under the First to File Rule.

Nor do I find any find any basis to implement or extend the section 362 stay, and I can find no present threat to the Debtors' reorganization that would cause me to utilize my section 105(a) power now.

This decision is without prejudice to Lyondell Chemical's right to renew its request for relief if, contrary to my expectation, entry of a judgment against Lyondell Chimie in the New York State Action becomes imminent.

Dated: New York, New York                   *s/Robert E. Gerber*
      June 10, 2009                          United States Bankruptcy Judge